

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THEODORE ROOSEVELT HIKEL,　　　）
JR., an individual, resident, citizen,　　）　　No. 74536-1-I
and registered voter, in the City of　　　）
Lynnwood, Washington,　　　　　　　）　　DIVISION ONE
　　　　　　　　　　　　　　　　　）
　　　　　　　Appellant,　　　　　　）
　　　　　　　　　　　　　　　　　）　　PUBLISHED OPINION
　　　v.　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　）
CITY OF LYNNWOOD, a non-charter,　）
municipal code city,　　　　　　　　）
　　　　　　　　　　　　　　　　　）
　　　　　　　Respondent.　　　　　）　　FILED: December 27, 2016
_____　）

LEACH, J. — Theodore Roosevelt Hikel Jr. appeals the trial court's

dismissal of his Public Records Act (PRA or Act)[1] lawsuit against the City of

Lynnwood (City). Hikel claims the City violated the PRA with its communications

to him about his records request and its failure to tell him that one installment

was ready for his review. Hikel also claims that the City had inadequate rules

and procedures in place for dealing with records requests.

The City's first response to Hikel's request violated the PRA because it did

not include any reasonable estimate when records would be provided. Its other

communications did not violate the Act. The City diligently responded to Hikel's

request, and its failure to notify him when the first installment was ready did not

---

[1] Ch. 42.56 RCW.

violate the PRA. Because Hikel first raised the inadequate rules argument in a reply brief to the trial court, the trial court properly declined to consider the issue, except in the context of the City's diligence.

Hikel asks for a per diem penalty, plus attorney fees and costs. Because the City never denied Hikel any records, the PRA does not provide for a penalty award. But the PRA does authorize an award of those attorney fees and costs incurred for the one issue on which Hikel has prevailed.

We affirm in part and reverse in part. We remand this case to the trial court for determination of the fees and costs incurred in litigating the issue about the City's response.

## FACTS

On June 22, 2015, Hikel submitted a public records request to the City of Lynnwood. The request asked for "[a]ll electronic and hard copy communications sent by and received by Council President Loren Simmonds and Council Assistant Beth Morris from Jan. 1, 2014 to June 22, 2015." Jerry Vogel, who worked in the City's Information Technology (IT) Department, conducted a search for the requested records and identified 137,000 responsive e-mails.

Five business days after the request, Debbie Karber, the deputy city clerk, e-mailed Hikel, acknowledging receipt of the request, asking for clarification due to the large volume of responsive records, and informing him that the City might

need to produce the records in installments. The e-mail stated, "Once we receive your reply we will notify you of an anticipated date of completion." We refer to this communication as the "June 29 letter."

Hikel replied, "I do wish to view all e-mails as requested. I understand this may take some time and I am amenable to dealing with these e-mails in batches. I would prefer to have them available in date sequence beginning with the most recent."

On July 10, Vogel discovered that his original calculation was mistaken and the correct number of responsive records was 27,500. This was still one of the largest requests the City had ever received. The same day, Karber told Hikel of this new calculation and that the City would have the first installment available by August 6, 2015. We refer to this communication as the "July 10 letter."

The City assigned to Karber primary responsibility for responding to public records requests. While Karber worked on Hikel's request, she was also responding to 114 other requests, including 7 other requests from Hikel. To prepare City e-mails for public disclosure, Karber reviewed the records for exempt material and converted them to a format that the requester can view. This can be accomplished by printing the documents or converting the record to a PDF (portable document format) file and storing it on a DVD (digital video disk) or CD (compact disk). The City maintained the requested records in PST

(personal storage table) format, the format used for the Microsoft Outlook e-mail program. Viewing the records in the PST format was not originally an option for Hikel because he did not have access to a program that could view this format and using the City's own network to view the files posed a security risk. But converting the records from PST to PDF format requires additional steps in preparing the records and is more time consuming.

The City had an installment of 138 records ready for Hikel's review on August 6, 2015. But Hikel did not come to City Hall to pick up the first installment until September 1, 2015. At City Hall, Hikel spoke with Debbie Hodgson. Hodgson was not aware of any records available for Hikel's review. Hikel left a letter with Hodgson asking about the delay in processing his request.

On September 11, 2015, Hikel filed this lawsuit. The City continued to work on Hikel's request, developing strategies to expedite the process of preparing records. The IT Department eventually discovered a way to quickly convert PST files to PDF files. All evidence indicates that the City continued to produce installments until it had fully responded to Hikel's request.

On October 2, 2015, Hikel filed an amended motion to show cause and compel disclosure. On December 10, 2015, the trial court denied Hikel's motion and dismissed the case. Hikel appeals.

## STANDARD OF REVIEW

Washington appellate courts review de novo an agency action challenged under the PRA.[2] "While agencies have some discretion in establishing procedures for making public information available, the provision for de novo review confirms that courts owe no deference to agency interpretations of the [PRA]."[3]

## ANALYSIS

The PRA "'is a strongly worded mandate for broad disclosure of public records.'"[4] The PRA requires every government agency to produce for inspection and copying any public record upon request unless it falls within a specific exemption.[5] Within five days of receiving a public record request, an agency must either (1) provide the record, (2) provide an Internet address and link to the requested records, (3) acknowledge receipt of the request and provide a reasonable estimate of the time the agency will require to respond, or (4) deny the request.[6]

---

[2] RCW 42.56.550(3).
[3] Zink v. City of Mesa, 140 Wn. App. 328, 335, 166 P.3d 738 (2007).
[4] Soter v. Cowles Publ'g Co., 162 Wn.2d 716, 731, 174 P.3d 60 (2007) (quoting Hearst Corp. v. Hoppe, 90 Wn.2d 123, 127, 580 P.2d 246 (1978)).
[5] RCW 42.56.070(1).
[6] RCW 42.56.520.

<u>Reasonable Estimate</u>

Hikel contends that the City violated the PRA because it did not provide him with a reasonable estimate of the time it would take to respond to his request.[7] He claims that neither the June 29 letter nor the July 10 letter provided the reasonable estimate required by the PRA.

*June 29 Letter*

First, Hikel claims that the June 29 letter violated the PRA because it did not provide any estimate of the time the City needed to respond. The City asserts that the Act permits an agency to ask for clarification before providing a reasonable estimate. The City claims that because it asked for clarification in its first response, the June 29 letter, it complied with the PRA. We disagree.

The PRA requires an agency to respond to a records request within five days. A response that does not either include access to the records or deny the request must contain the agency's estimate of the time it will take to respond. No statute or case provides for an extension of the five-day period. The City acknowledged Hikel's request within the five-day period, but that acknowledgement was deficient because it did not contain any time estimate.

The PRA recognizes that an agency may not be able to respond fully to a request if that request is unclear. Therefore, RCW 42.56.520 allows an agency

_____

[7] Hikel challenges only whether the City provided a timely estimate and not the reasonableness of any estimate given.

-6-

additional time either to provide the records or deny the request. For example, in Forbes v. City of Gold Bar,[8] we concluded that the City was not bound by its original estimate and was permitted additional time to provide the records. The PRA does not, however, allow additional time to properly acknowledge a request. This acknowledgement must include a reasonable estimate of the time it needs to respond. By failing to provide a reasonable estimate in its June 29 letter, the City violated the PRA.

The City asks this court to interpret the clarification provision to excuse its duty to provide a reasonable estimate until it receives clarification. Hikel responds that requesting clarification does not alter the deadline for providing a reasonable estimate. To decide if a clarification request extends the time for providing a reasonable estimate, we look to the text of the statute. RCW 42.56.520 states,

> Within five business days of receiving a public record request, an agency . . . must respond by either (1) providing the record; (2) providing an internet address and link on the agency's web site to the specific records requested . . . ; (3) acknowledging that the agency . . . has received the request and providing a reasonable estimate of the time the agency . . . will require to respond to the request; or (4) denying the public record request. Additional time required to respond to a request may be based upon the need to clarify the intent of the request . . . . In acknowledging receipt of a public record request that is unclear, an agency . . . may ask the requestor to clarify what information the requestor is seeking.

---

[8] 171 Wn. App. 857, 863, 288 P.3d 384 (2012).

The language and structure of the statute do not identify requesting clarification as a fifth alternative to the four choices listed. In interpreting RCW 42.56.520, Division Two has stated that courts "'must not add words where the legislature has chosen not to include them.'"[9] We agree and decline the City's invitation to add language to the statute. The statute does not provide an agency with the option of asking for clarification of a request as a substitute for one of the four enumerated actions to be completed within five days. While the PRA permits an agency to ask for clarification, the agency must also complete one of the four enumerated options within five days.

Here, the facts support finding a violation. Hikel's request identified clearly the requested records. "At a minimum, a person seeking documents under the PRA must identify the documents with sufficient clarity to allow the agency to locate them."[10] The City had no difficulty identifying the records Hikel requested, all communications between two specific individuals within a specific date range. Based on the request, the City calculated an initial number of responsive records—albeit a very large number. The City makes no claim that it could not estimate the time it needed to produce these records. It requested clarification only to reduce the number of records it had to provide Hikel.

---

[9] Hobbs v. Wash. State Auditor's Office, 183 Wn. App. 925, 943, 335 P.3d 1004 (2014) (internal quotation marks omitted) (quoting Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010)).
[10] Hobbs, 183 Wn. App. at 944 (citing Hangartner v. City of Seattle, 151 Wn.2d 439, 447, 90 P.3d 26 (2004)).

Further, the PRA provides an agency with some protection from an inaccurate estimate because it can amend its estimate when it has better information. The Public Records Act Deskbook notes,

> With some larger requests, the completion date will be fairly speculative at an early stage, and therefore an exact date is not required. Nevertheless, some time range should be included. The agency may want to highlight the speculative nature of the estimate and provide a date when it would expect to have a more accurate estimate. For any large request, however, original estimates may be revised frequently.[11]

The City identifies no reason it could not provide an initial estimate in its first response and then amend if necessary. Under these circumstances, the PRA required the City to provide a reasonable estimate within five days, and its failure to do so violated the Act.

*July 10 Letter*

Hikel claims that the City's July 10 letter also violated the PRA because it did not provide an estimate of the time when Hikel would receive access to all the documents he requested. Instead, this letter told Hikel that the first installment would be ready on or before August 6, 2015. Citing Hobbs v. Washington State Auditor's Office,[12] the City asserts that the PRA required that it provide only a reasonable estimate of the time for the first installment. In Hobbs, the requester

---

[11] WASH. STATE BAR ASS'N, PUBLIC RECORDS ACT DESKBOOK: WASHINGTON'S PUBLIC DISCLOSURE AND OPEN PUBLIC MEETINGS LAWS § 6.5(1) cmt. at 6-22 (2014).

[12] 183 Wn. App. 925, 335 P.3d 1004 (2014).

asked the court "to interpret RCW 42.56.520 as requiring the agency to provide an estimate of the reasonable amount of time needed to fully or completely respond to the request."[13] The court declined to adopt this interpretation because the legislature had not included that language in the statute.[14] It decided that the plain language of RCW 42.56.520 requires only a reasonable estimate of time until the first installment. Following Hobbs, we find that the City's second letter satisfied the Act's requirements by providing an estimate for the first installment.

## Clarification

Hikel also claims that the City was not entitled to ask for clarification because the request was objectively clear.[15] He contends that the size of a disclosure does not provide a legitimate reason for asking for clarification.[16] Hikel did not raise this argument before the trial court. "Under RAP 2.5(a), appellate courts may refuse to hear any claim of error not raised at trial."[17] We do not consider Hikel's clarification argument.

---

[13] Hobbs, 183 Wn. App. at 943.

[14] Hobbs, 183 Wn. App. at 943.

[15] Hikel cites WAC 44-14-04003(7) ("An agency can only seek a clarification when the request is objectively 'unclear.' Seeking a 'clarification' of an objectively clear request delays access to public records.").

[16] See RCW 42.56.520 (listing "need to clarify the intent of the request, to locate and assemble the information requested, to notify third persons or agencies affected by the request, or to determine whether any of the information requested is exempt" as reasons a request "may be based upon").

[17] State v. O'Hara, 167 Wn.2d 91, 94, 217 P.3d 756 (2009).

Notification

Hikel claims that the PRA required that the City notify him when some records were ready to view on August 6. In its July 10 letter, the City told Hikel that the first installment would be ready on August 6, but the City did not notify him when it completed the installment. Hikel acknowledges that no statute requires this notification, but he contends that based on his past experience with the City, he was entitled to notification.

Hikel does not cite any authority to support his claim that an agency must abide by its past practice. In fact, case law suggests otherwise. An agency does not violate the PRA merely by failing to meet its own self-imposed deadlines as long as it was acting diligently in its attempts to respond to the PRA request.[18] As the trial court noted, when Hodgson told Hikel on September 1 that no records were available for him to view, she was mistaken. A single employee's mistake is not evidence that the City did not diligently respond to Hikel's request. To the contrary, the record shows that City employees worked diligently to respond to this request, as well as others, some by Hikel himself. Karber converted many records to a form convenient to Hikel and consulted with the IT Department multiple times to develop a way to respond to requests faster.

---

[18] Hobbs, 183 Wn. App. at 940; see also Andrews v. Wash. State Patrol, 183 Wn. App. 644, 651-53, 334 P.3d 94 (2014), review denied, 182 Wn.2d 1011 (2015).

Further, Hikel does not establish that the City had a past practice of notifying requesters when records were ready. Hikel claims that a series of letters from Karber, notifying him that installments were ready for pick up, show that the City regularly provides predelivery notification. Karber began providing these notifications to Hikel after he failed to pick up the first installment on August 6 and was misinformed that no records were ready. Because Hikel began receiving these notifications after this initial installment, he cannot reasonably assert that he relied on a past practice for the first installment. The City told Hikel when the first installment would be ready, and the installment was ready then. The City had no duty to confirm that it met the August 6 date.

<u>Inadequate Rules</u>

Finally, Hikel contends that the trial court should have considered his claim that the City violated the PRA because it did not have adequate rules and procedures in place to handle records requests. The PRA requires agencies to "adopt and enforce reasonable rules and regulations."[19] Because this claim first appeared in Hikel's trial court reply brief and nowhere else, the trial court appropriately limited its consideration of the argument to the narrow issue of whether the City acted reasonably and diligently. The trial court acted within its

_____

[19] RCW 42.56.100.

discretion when it declined to consider whether the City's alleged failure to promulgate rules was an independent violation of the PRA.

Hikel asserts that he made this rules argument earlier. He points to his complaint, his original motion and memorandum to show cause, and his amended motion and memorandum to show cause. Hikel's complaint cited RCW 42.56.100 and its requirement "to adopt and enforce reasonable rules and regulations" but made no argument or allegation about any failure to promulgate rules and described no claim based on inadequate rules in the section of the complaint labeled "claims and causes of action." Hikel's original motion merely mentioned RCW 42.56.100 and did not include any claim that the City's rules were inadequate. Rather, Hikel cited to the City's policies to support his argument that the City's actions did not conform to its written procedures. Hikel's amended motion also cited to RCW 42.56.100 for the argument that the City did not comply with its own policy but did not suggest that the City's rules were inadequate. None of these documents alleged that the City failed in its duty to adopt rules and procedures.

Because the argument was not properly raised below, we also decline to consider it.

## Remedy

Finally, we must decide the remedy available to Hikel for the City's failure to provide a reasonable estimate within five days. Hikel claims that he is entitled to fees and costs, as well as a penalty for each day of the violation. We disagree about the daily penalty. The PRA authorizes an award of reasonable fees and costs incurred in litigating that single issue. The PRA does not provide for penalties for this violation, however.

The PRA provides,

> Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record.[20]

The PRA does not provide for penalties unless some "final agency action" denies inspection or copying of a public record.[21] The PRA does not provide a freestanding penalty for procedural violations like the one that occurred here.[22] Rather, courts consider this kind of violation as an aggravating factor when

---

[20] RCW 42.56.550(4).

[21] Cedar Grove Composting, Inc. v. City of Marysville, 188 Wn. App. 695, 715, 354 P.3d 249 (2015).

[22] Sanders v. State, 169 Wn.2d 827, 849, 859, 240 P.3d 120 (2010) (finding that the attorney general's office violated the PRA when it failed to provide a brief explanation of its claimed exceptions).

setting penalties for withholding records.[23] Here, the City never denied Hikel the right to inspect any records; therefore, he is not entitled to a penalty.

Hikel is, however, entitled to attorney fees for issues on which he prevails. "The plain language of the PRA provides that costs and reasonable attorney fees shall be awarded to a requester for vindicating 'the right to receive a response.'"[24] In Hobbs, the court held that a requester could not recover any penalty or fees for PRA violations if the agency cured the violation before taking final action to deny the requested records.[25] We disapprove of this view to the extent that it denies fees for procedural violations.

The Supreme Court has observed that an interpretation where

the only remedy for the State's insufficient withholding index was to compel an explanation of the exemptions . . . would contravene the PRA's purpose because an agency would have "no incentive to explain its exemptions at the outset" and "[t]his forces requestors to resort to litigation, while allowing the agency to escape sanction of any kind."[26]

The same principle applies here: if the only remedy for failing to provide a reasonable estimate is to treat the violation as an aggravating factor in calculating a penalty, where the agency does not withhold the records, and is therefore subject to no penalty, it has no incentive to provide a reasonable

---

[23] See Sanders, 169 Wn.2d at 835.
[24] City of Lakewood v. Koenig, 182 Wn.2d 87, 97, 343 P.3d 335 (2014) (quoting RCW 42.56.550(4)).
[25] Hobbs, 183 Wn. App. at 940-41.
[26] Koenig, 182 Wn.2d at 97-98 (second alteration in original) (quoting Sanders, 169 Wn.2d at 847).

estimate. For these reasons, we conclude that the legislature intended always to provide for an award of fees and costs when an agency fails to comply with RCW 42.56.520.

Hikel prevails solely on his claim that the City did not provide a reasonable estimate of the response time it needed within five days of his request, and he is entitled to only those fees and costs incurred litigating that issue in the trial court and on appeal.

## CONCLUSION

We affirm in part and reverse in part. Because the City's initial reply to Hikel's records request did not include a reasonable estimate of the time required to respond to the request, the City violated the PRA. All of Hikel's other claims fail because he did not properly present them to the trial court or they lack merit.

Hikel is entitled to fees incurred in litigating the issue on which he prevailed, but Hikel is not entitled to a penalty award. We remand this case for the trial court to determine the amount of the fees and costs to be awarded.

_Leach, J._

WE CONCUR:

_Spearman, J._              _Cox, J._

-16-